UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEROME GIVENS,

                                        Plaintiff,                    No. 04-CV-6586 CJS

         -vs-

                                                                      DECISION AND ORDER

AMF TERRACE GARDEN LANES,

                                        Defendant.

_____


APPEARANCES

For plaintiff:                    Jerome Givens, pro se
                                  332 Cascade Place
                                  Rochester, New York 14609

For defendants:                   Judith Treger Shelton, Esq.
                                  Timothy E. Delahunt, Esq.
                                  Kenney Shelton Liptak Nowak LLP
                                  510 Rand Building
                                  14 Lafayette Square
                                  Buffalo, New York 14203


INTRODUCTION

        This is an action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. § 2000e *et seq.*[1]  Now before the Court is defendant's motion [#29]

for summary judgment and plaintiff's cross-motion [#33] for the same relief.  For the

_____

        [1]As will be discussed further below, plaintiff also wishes to assert a claim under the New York
Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*, though no such claim is contained in the
Complaint [#1].

1

reasons that follow, defendant's motion is granted in part and denied in part, and plaintiff's cross-motion is denied.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to plaintiff Jerome Givens ("plaintiff").  In this action, plaintiff alleges employment discrimination on the basis of his race and color, which he identifies as "Afro American" and "Black", respectively.  Defendant AMF Terrace Garden Lanes ("defendant") operates a bowling center in Rochester, New York.  Defendant hired plaintiff to work part-time at the bowling center's front counter on or about August 18, 2003.   At all relevant times, plaintiff was the only person of his race and color employed by defendant.  Plaintiff usually worked three days per week, and sometimes four, at the front counter.  In addition to working at defendant's front counter, plaintiff also volunteered to work additional hours painting the interior of the bowling center.

Plaintiff contends that he performed his work satisfactorily.  In that regard, on November 7, 2003, defendant's General Manager, Mike Montoya ("Montoya"), signed a certification indicating that plaintiff had "demonstrated sufficient competency" and had "satisfactorily completed the evaluation period."  Plaintiff recalls only two instances where his managers commented negatively on his job performance.  The first time, defendant's Assistant Manager, Scott Mitchell ("Mitchell"), told him to "slow down" when making announcements over the bowling center's PA system.  On another occasion, Mitchell spoke to plaintiff about an incident in which plaintiff had accidentally terminated a bowling game from the center's front desk before the customers were finished bowling.

On or about November 17, 2003, defendant hired a white employee, Jeremy

2

Button ("Button"), to work at the front counter.  For approximately the next two weeks,

Button and plaintiff worked the same shifts while plaintiff trained Button.  Then, on

Wednesday, November 26, 2003, plaintiff arrived at the bowling center to work his usual

shift, and noticed that his scheduled hours had been reduced to one day per week,

Sunday, and that Button was scheduled to work the days and shifts that had previously

been assigned to him.  When plaintiff asked Montoya why he had done this, Montoya

responded, "Well, we're trying to give other people more hours."  Plaintiff waited for a

while and asked to discuss the matter further, but Montoya responded, "Talk to me in a

couple of weeks."  Plaintiff then left the center and returned on Sunday, November 30,

2003, the day that he was scheduled to work, and saw that he again had been

scheduled to work only one day during the coming week.  Upset that the schedule had

not changed from the previous week, plaintiff told Mitchell that he could not afford to

work only one day per week, and that he would be better off collecting unemployment, to

which Mitchell responded, "Oh, we can do that."  Plaintiff then left the bowling center

without working his shift.  Plaintiff also did not work his next scheduled shift on

December 7, 2003.  Plaintiff's employment was eventually terminated when he failed to

report for work.

Defendant disputes this version of events in several respects.  For example,

defendant contends that plaintiff's work performance was consistently sub-par, and that

he refused to meet with Montoya and Mitchell to discuss the problem.  Defendant further

contends that it cut plaintiff's hours only in order to induce him to meet with

management.

Following the termination of his employment, plaintiff filed a discrimination

3

complaint with the New York State Division of Human Rights ("NYSDHR"), which

simultaneously filed the discrimination charge with the United States Equal Employment

Opportunity Commission ("EEOC").  Following an investigation, the NYSDHR dismissed

the complaint, finding no probable cause to believe that defendant had discriminated

against plaintiff.  Plaintiff did not appeal the NYSDHR's decision to New York State

Supreme Court, though he could have done so.  The EEOC adopted the NYSHDR's

findings and issued plaintiff a "right to sue" letter on November 18, 2004.  Plaintiff then

commenced the subject action.  On the form complaint filed in this action, plaintiff

alleged that defendant unjustly terminated his employment, harassed him on the basis

of unequal terms of employment, and retaliated against him.

Following discovery, defendant filed its summary judgment motion.  Defendant

contends that plaintiff cannot establish even a prima facie case of discrimination, since

the reduction of his work hours had nothing to do with his race.  Specifically, defendant

maintains that the reduction of plaintiff's hours and the  alleged taking of plaintiff's shifts

by Button raises no inference of discrimination, for several reasons.  First, as discussed

earlier, defendant contends that plaintiff's hours were reduced solely because he

refused to meet with management to discuss his poor job performance.  Moreover,

defendant states that it did not "give" plaintiff's hours to Button, since the number of

hours that Button worked did not increase after plaintiff's hours were reduced.  Lastly,

defendant contends that it terminated plaintiff's employment only after he abandoned his

job by failing to work the last shift that he was assigned.  Defendant also states that any

supplemental claim under New York State Law is barred, since plaintiff elected his

remedy as to his state-law claim by filing a complaint with the NYDHR.  Plaintiff cross-

moved for summary judgment.

Plaintiff and defendant's counsel appeared before the undersigned for oral argument of the motions on May 23, 2006.  The Court has thoroughly considered the entire record.

ANALYSIS

*Rule 56*

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).  Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving

party must present evidence sufficient to support a jury verdict in its favor. *Anderson*,

477 U.S. at 249.  The parties may only carry their respective burdens by producing

evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts

contained in affidavits, attached exhibits, and depositions, must be viewed in the light

most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Summary judgment is appropriate only where, "after drawing all reasonable inferences

in favor of the party against whom summary judgment is sought, no reasonable trier of

fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d

Cir.1993).

       *Title VII and the New York Human Rights Law*

      Title VII "makes it unlawful for an employer to discriminate against any individual

with respect to the 'compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin.'" *Richardson v.

New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations

omitted).  NYHRL similarly prohibits discrimination on the basis of race or color. 29

U.S.C. § 623; N.Y. Executive Law § 296(a).  Title VII and NYHRL discrimination claims

are analyzed under the same three-tier burden-shifting test "set forth in *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its

progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y.

1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000);

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), cert den. 534

U.S. 993 (2001).  Under the first tier of the *McDonnell Douglas* test, the plaintiff must

establish a prima facie case.[2]  To establish a prima facie case of discrimination, a

plaintiff must show four things: (1) he is a member of the protected class; (2) he is

qualified for his position; (3) he has suffered an adverse employment action; and (4) the

circumstances surrounding that action give rise to an inference of discrimination.

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466-467 (citations omitted).  If the

plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate,
> nondiscriminatory reason for the employee's discharge [or other adverse
> employment action].  At this stage, the employer need only articulate--but
> need not prove-- the existence of a nondiscriminatory reason for its
> decision. If the defendant carries this burden of production, the
> presumption raised by the prima facie case is rebutted, and the factual
> inquiry proceeds to a new level of specificity.  Once defendant meets its
> burden of production, the burden shifts back to plaintiff. Under the third tier
> of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of
> proving that the reason proffered by the employer is a pretext for unlawful
> discrimination.  In order to survive a motion for summary judgment, plaintiff
> must establish a genuine issue of material fact as to whether the
> employer's reason . . .  is false and as to whether it is more likely that a
> discriminatory reason motivated the employer to make the adverse
> employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,*

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir.  2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's

proffered reason was false may, or may not, establish the required proof of

---

[2]It is clear that "the burden of proof that must be met to permit an employment-discrimination
plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM
Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation
marks omitted).

discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.  In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S.Ct. 2097, 2108-09 (2000)).  In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted).  However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

In the instant case, defendant concedes, for purposes of the subject motions, that plaintiff has established the first three elements of a prima facie case of discrimination. That is, defendant does not deny that plaintiff was a member of protected class, that he was qualified for the position, or that he suffered an adverse employment action when

his hours were reduced.  However, defendant contends that plaintiff has produced no

proof that the reduction of his hours occurred under circumstances that give rise to an

inference of discrimination.  The Court disagrees, based on plaintiff's representations

that: 1) he was the only African American Black employee at the bowling center; 2)

management never requested a meeting with him concerning his job performance, but

instead reduced his hours without warning; and 3) management gave his shifts to

Button.  With regard to this last factor, defendant argues that Button could not have

"taken" plaintiff's hours, since his number of hours worked did not increase after

plaintiff's were cut.  However, plaintiff contends that during the two weeks prior to his

departure, defendant hired Button and had him work the same shifts and hours that

plaintiff was working, so that plaintiff could train him.  Assuming that were true, as the

Court must, Button's hours would not have increased when plaintiff's were reduced.

Consequently, the Court finds that plaintiff has established a prima facie case as to his

claim for disparate treatment and termination of his employment.  The Court agrees with

defendant, however, that plaintiff has not demonstrated a prima facie case of retaliation,

and the retaliation claim is dismissed.

Moreover, the Court finds that plaintiff has come forward with sufficient evidence

to create a triable issue of fact as to whether defendant's proffered reason for its actions

is false, and whether the real reason for its actions was discrimination.  In addition to the

reasons already mentioned, most notably plaintiff's assertion that his shifts were taken

over by a white employee without justification, the Court finds defendant's explanation

somewhat implausible.  For example, if "on a day-to-day basis, [plaintiff] failed to meet

performance expectations", by among other things, "watching televisions . . . instead of

working", "ignoring front desk customers", and "leaving the front desk unattended", as defendant contends, and plaintiff then refused to meet with management as requested, the Court fails to see why defendant would not have terminated plaintiff's employment or at least suspended it, as opposed to merely reducing his hours.  Moreover, it appears that defendant never contemporaneously documented even a single instance of alleged poor performance.  Plaintiff states that, in so doing, defendant failed to follow its Progressive Discipline Policy set forth in the Employee Handbook.  Defendant disputes this, stating that "the progressive discipline policy is generally directed to misconduct, and not performance issues."  This explanation is unconvincing, however, since the policy's list of offenses includes "inefficiency or lack of application of effort on the job", as well as "not performing the essential functions of the job".  In short, defendant has failed to offer a plausible explanation for its actions.  Moreover, during the proceeding before the NYDHR, defendant apparently misrepresented that it did not hire Button until *after* plaintiff's employment was terminated.[3]  Consequently, the Court finds that plaintiff has carried his burden under the McDonnell Douglas test, and that triable issues of fact exist with regard to plaintiff's Title VII claims.

On the other hand, the Court agrees with defendant that plaintiff may not pursue claims under the NYHRL. The NYHRL statute contains an election of remedies provision, which states, in relevant part, that

'[a]ny person claiming to be aggrieved by an unlawful discriminatory

---

[3]NYSDHR Inter-Office Memorandum at 2 ("The respondent states [that] . . . Jeremy Button, Caucasian, . . . did not start work until after complainant quit."); *see also*, NYDHR Chron Report at 3 ("It was apparent [from the payroll records] that Mr. Button was hired before complainant left work, not after as stated in the reply.").

practice shall have a cause of action in any court of appropriate jurisdiction for damages ⋯ unless such person had filed a complaint hereunder or with any local commission on human rights, ⋯ provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.' N.Y. Exec. Law § 297(9). Put succinctly, subsection 297(9) provides that 'a person claiming to be aggrieved by an unlawful discriminatory practice may seek relief either from a court of appropriate jurisdiction or from the [New York State Division of Human Rights] or any local commission on human rights, but not both.'  This express limitation on the election of remedies applies equally to NYHRL claims brought in state court and to those brought as pendant claims in federal court.

*Lennon v. NYC*, 392 F.Supp.2d 630, 640-41 (S.D.N.Y. 2005) (citations omitted); *see also, Forbes v. State University of New York at Stony Brook*, 259 F.Supp.2d 227, 235 (E.D.N.Y. 2003) ("After the NYSDHR decides the claim, a litigant may only appeal that decision to the Supreme Court of the State of New York.  A litigant may bring a subsequent judicial action only when the NYSDHR dismisses the claim for administrative convenience.") (citations omitted).  Here, plaintiff filed his complaint with the NYSDHR and received a decision on the merits.  That being the case, his only judicial remedy would have been to appeal the NYSDHR's decision to New York State Supreme Court, which he did not do.  Nonetheless, he is barred from bringing his state-law claims before this Court.


CONCLUSION

Defendant's motion for summary judgment [#29] is granted in part and denied in part.  The application is granted as to plaintiff's Title VII retaliation claim and as to his state law claims, and those are dismissed.  Defendant's application is denied as to

plaintiff's remaining Title VII claims.  Plaintiff's cross-motion [#33] is denied in its entirety.

The case will proceed to trial on the remaining claims, and the Court will issue a

separate pretrial order.

     SO ORDERED.

Dated: Rochester, New York
     May 30, 2006

                          ENTER:

                          /s/ Charles J. Siragusa_____
                          CHARLES J. SIRAGUSA
                          United States District Judge